UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHELBY HINKLEY,<br><br>　　　　　Movant,<br>　v.<br><br>LIBERTY POWER CORP., LLC,<br>LIBERTY POWER HOLDINGS, LLC,<br>Delaware limited liability companies,<br><br>　　　　　Respondents. | No.<br><br>**NON-PARTY SHELBY HINKLEY'S MEMORANDUM OF POINTS AND AUTHORITIES FOR HER MOTION FOR PROTECTIVE ORDER QUASHING RESPONDENTS' SUBPOENA FOR DEPOSITION** |

Non-Party Shelby Hinkley ("Hinkley") hereby submits her memorandum supporting her Motion for a protective order and order quashing the deposition subpoena served by Liberty Power Corp., LLC and Liberty Power Holdings, LLC ("Liberty"), pursuant to Federal Rules of Civil Procedure 26 and 45.

## I.  Introduction

Hinkley's spouse, Samuel Katz, brought a class action against Liberty in the District of Massachusetts for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA")[1]. (Preston Decl. ¶2.) Liberty served two subpoenas on Hinkley issued from the Massachusetts court. (*Id*. ¶¶15, 18.) The only relief Hinkley seeks—and the only relief she needs—is to quash the deposition noticed in the second subpoena. Hinkley timely and properly served objections to the production of document sought by Liberty's subpoenas.[2] This Court is the proper venue for this Motion.[3] The Court should quash the deposition subpoena, and enter a protective order requiring Liberty to obtain leave of Court to serve further subpoenas against Hinkley or her family. If the Court decides to permit the deposition, notwithstanding the record below, Hinkley moves in the alternative for an order (1) requiring her deposition be taken telephonically; and (2) deferring her deposition until after Katz's deposition.

## II.  The Record Warrants the Relief Hinkley Seeks

Rule 26 limits discovery, and "provides that, upon a showing of good cause, the presiding

---

[1] In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims v. Arrow Fin. Services, L.L.C.*, 565 U.S. 368, 132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012) ("The Act bans certain practices invasive of privacy").
[2] *See In re Coan*, No. 06-80350, 2007 WL 128010, *2 (N.D. Cal. Jan. 12, 2007) (non-party can oppose subpoena for documents by "written objection," but "deposition subpoena may only be challenged by moving to quash").
[3] *See* Fed. R. Civ. P. 45(d)(3)(A) ("court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden"). Cf. Fed. R. Civ. P. 26(c)(1) ("any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken").

court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.'" *Heidelberg Am., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) (quoting Fed. R. Civ. P. 26(c)). Rule 26(c)'s "good cause" standard is "flexible" and "requires an individualized balancing of the many interests that may be present in a particular case," especially "considerations of the public interest . . . and privacy interests[.]" *Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005).

"Even more pertinently" than Rule 26(c), Rule 45 provides a court "must quash or modify a subpoena" if it "subjects a person to undue burden." *Heidelberg*, 333 F.3d at 41; Fed. R. Civ. 45(d)(3). When evaluating undue burden under Rule 45, court assess "such factors as the relevance of the documents sought, the necessity of the documents sought, the breadth of the request, and expense and inconvenience can be considered." *Garcia v. E.J. Amusements*, 89 F. Supp. 3d 211, 215 (D. Mass. 2015) (citation, punctuation omitted). These factors support the relief sought herein under both Rule 26(c) and 45(d).

   A. **Liberty's Deposition Subpoena Seeks to Chill Katz's Litigation**

The Court should consider the totality of the record in light of Rule 26 and 45's individualized, fact-specific analyses. Liberty's deposition of Hinkley is one part of a campaign intended to intimidate and chill Katz' representation of the class. (Preston Decl. ¶9.)

There is some direct evidence of retaliatory motive: Liberty has asserted that Katz's amended complaint was improper.[4] (*Id*. ¶11.) Moreover, the timing of Liberty's discovery here suggests retaliatory animus: "close temporal proximity between two events may give rise to an

---

[4] Katz obviously disputes this. Liberty's specific objection seems to be that Katz did not explicitly disclose that he was going to file an amended complaint. (Preston Decl. ¶11.) But Federal Rule 15(a)(1)(B) authorized filing an amended complaint, and it has been on the books in its current form for years. Also, the stipulation preceding the amended complaint specifically sought an extension on Katz's deadline "to oppose **or otherwise respond to Defendants' pending motion**[] [to dismiss]." (*Id*. ¶7.)

Non-Party's Memorandum for Protective Order   2

inference of causal connection," including "retaliatory motive." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) (citations, punctuation omitted). On July 16, 2018, Katz filed his amended complaint, which added two plaintiffs and contained over 600 complaints about Liberty's telemarketing practices obtained from the Federal Trade Commission's consumer complaint database. (Preston Decl. ¶9.) The next day (July 17), Liberty threatened to sue Katz—which it has since done.[5] (*Id*. ¶¶12-13.) Although Liberty denies it now, it threatened to sue Katz's counsel the day after that (July 18). (*Id*. ¶14.) By the end of that week (July 20), Liberty served its first subpoena on Hinkley for essentially the same documents it had requested from Katz. (*Id*. ¶¶15-16.) When the parties met and conferred the next time, Liberty pressed for individual settlement negotiations. (*Id*. ¶22.) On August 6, four days after Hinkley objected to the first subpoena, Liberty served Hinkley with the second subpoena—again seeking almost exactly the same set of documents, but this time also noticing Hinkley's deposition. (*Id*. ¶¶17-19.) On August 8, two days later, Liberty also served Katz with a subpoena for the inspection of his current residence—not where he resided at the time of Liberty's telemarketing calls at issue in the Massachusetts case. (*Id*. ¶20. *Cf. id*. ¶2; Hinkley Decl. ¶2.) Lastly, Liberty filed a thirty-five (35) page motion to dismiss the amended complaint asserting, e.g., that the TCPA is unconstitutional. (Preston Decl. ¶21.)

      Rule 26 and 45 prohibit parties from using discovery for purposes other than uncovering relevant facts. Rule 26(c) authorizes protective orders because it "is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Such abuse is not limited to "delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Id*. at 34-35. The

---

[5] The timing here is particularly telling: Liberty had the audio recording on which it based its threats since July 3, when Katz produced it—fourteen days before Katz's amended complaint. (Preston Decl. ¶¶6, 12, 14.)

Non-Party's Memorandum for Protective Order     3

recent amendments to Rule 26 concerning proportionality reflect a renewed concern about "prevent[ing] use of discovery . . . as a device to coerce a party, whether financially weak or affluent." Fed. R. Civ. P. 26 advisory committee note on 2015 amendment.[6] Likewise, courts quash subpoenas where the litigant does not have "any intention" of using the discovery "in order to litigate," but "appear[s] to be using [discovery] only to . . . attempt[] to negotiate a quick settlement." *Combat Zone, Inc. v. Does 1-84*, No. 12-30085, 2013 WL 1092132, *7 (D. Mass. Feb. 20, 2013).

Courts curb the use of subpoenas to harass non-parties, and in turn exert indirect pressure on the actual litigants.[7] In particular, where a court concludes that a party's claimed basis for deposing a parties' spouse is "pretexual, and that the subpoena is being served to harass and embarrass" that party and the party's spouse, it will quash the deposition subpoena and impose other remedies. *McCarthy v. Sarroff*, No. 02-6030, 2003 WL 21145573, *1 (S.D.N.Y. May 16, 2003).[8] Use of discovery to harass and intimidate class plaintiffs poses a particular, systematic risk of chilling class actions: the courts "must protect the named representatives from potentially harassing discovery." 7B Charles Alan Wrigh & Arthur R. Miller, Federal Practice and Procedure § 1796.1 (3d ed. 2018). Courts bar discovery with marginal value that disproportionately burdens, harasses, intimidates, or embarrasses class representatives.[9] The

---

[6] *See* Fed. R. Civ. P. 26 advisory committee note on 1986 amendment ("the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues").

[7] *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming sanctions under Rule 45 for "oppressive subpoena requests against the employer of anyone who dares to submit a declaration" supporting other party); *Turnley v. Banc of Am. Inv. Servs.*, Inc., No. 07-10949, 2008 WL 5412886, *2 (D. Mass. Dec. 8, 2008) ("depositions—particularly of [proposed class representatives'] current employers—seem uniquely harassing").

[8] *See also Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 22 (D. Mass. 2000) (finding subpoena served "solely to pressure [witness's] wife into testifying to be entirely improper"; quashing subpoena, and sanctioning party under Rule 45(c)(1)).

[9] *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064, 1065 (9th Cir. 2004) (protective order properly barred discovery on immigration status that "would chill the plaintiffs' willingness and ability to bring [class claims]"; "chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest"); *In re Broiler Chicken Antitrust Litig.*, No. 16-08637, 2018 WL 999899, *1 (N.D. Ill. Feb. 21, 2018) ("limited value of the

Court should protect class representatives' spouses (as well their children and employers) against this sort of invasive, pretextual discovery no less than the class representatives themselves because the chilling effect is the same.

### B. Taking Hinkley's Deposition Inevitably Imposes Burden

Hinkley is a mother of three children, all under four years old. (Hinkley Decl. ¶2.) Attending a deposition would force her to obtain substitute child care for the duration of the deposition, and the hour's travel to and from Bangor. (*Id*. ¶3.) Deposing Hinkley inevitably poses needless burden and cost which is, as set forth below, disproportionate to any likely benefit. The burden of the deposition on Hinkley, as a non-party, is afforded a special weight.[10]

### C. There Is No Likely Benefit to Taking Hinkley's Deposition

Contrasted with the inevitable burden on Hinkley is the limited value of the deposition. Courts have found subpoenas for irrelevant information inherently impose "undue burden."[11] The same logic and result applies to duplicative and cumulative testimony, or depositions which primarily seek information that is privileged from disclosure.[12] Liberty set Katz's deposition for July 27, canceled that date, and never reset it. (Preston Decl. ¶¶5, 8.) At a minimum, Liberty

---

discovery Defendants are seeking does not justify the significant burden and potential chilling effect on private antitrust enforcement that would follow from a court order that such information be produced by named putative class representatives"); *Ferraro v. Gen. Motors Corp.*, 105 F.R.D. 429, 432 (D.N.J. 1984) ("invasive scrutiny, although having no relationship to the merits of the class action itself, could be misused as a device to deter such suits entirely," and "deter plaintiffs from seeking class action redress"); *In re Nissan Motor Corp. Antitrust Litig.*, 22 Fed. R. Serv. 2d 63 (S.D. Fla. 1975) (invasive discovery against class representatives "would tend to invade the plaintiffs' privacy and have a 'chilling effect' upon the bringing and maintenance of class action suits contrary to the intent of Congress").

[10] *See Heidelberg*, 333 F.3d at 41-42 (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998) for proposition that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs").

[11] *See Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) ("compulsion of production of irrelevant information is an inherently undue burden"; citing *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335-336 (N.D. Cal. 1995) (where evidence sought in discovery is not relevant, "then any burden whatsoever imposed upon [non-party] would be by definition 'undue'").

[12] Rule 26 imposes an affirmative obligation on the Court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, [or] less burdensome." Fed. R. Civ. P. 26(b)(2)(C)(i) ("court must limit . . . extent of discovery").

Non-Party's Memorandum for Protective Order          5

should have deposed Katz first before it turns to Hinkley.

Liberty has offered a series of justifications for Hinkley's deposition, but none of them hold water. (*Id*. ¶¶22, 23, 26.) Liberty posits Hinkley "can explain why her household has two VoIP landline telephone numbers," and "can provide information on what telephone number(s) are Plaintiff Katz's actual residential telephone number." (Preston Decl. ¶26.) In fact, Hinkley does not recognize all the telephone numbers cited by Liberty, and cannot explain the function of each number. (Hinkley Decl. ¶4.) But Katz can: in fact, he already has. Katz testified in a deposition exactly what these telephone numbers are and how he uses them, and Liberty already has an (unauthorized) copy of that deposition transcript. (Preston Decl. ¶27.) Liberty's need to depose Hinkley is pretextual.

Liberty alleges Katz has lied because he has claimed two different residential numbers at different times (508-966-XXXX and 978-877-XXXX), and it can force Hinkley to disclose Katz's "actual residential telephone number." Again, Liberty has Katz's deposition transcript, so it knows he has two residential numbers and there is no "contradiction."[13] Liberty also cites to a discrepancy in another of Katz's TCPA complaints (*Katz v. Royal Seas, Inc.*, No. 1666-CV-000158 (Mass. Tr. Court, Milford Dist. Ct. Div.) which alleges the 978-877-XXXX telephone number was a cellular telephone in one paragraph, and a landline in another paragraph. (Preston Decl. ¶26.) Liberty offers no explanation why this obvious scrivener's error has any relevance to the instant case. (*See* Hinkley Decl. ¶5.) It might be probative if Katz had ever alleged Liberty called the 978 telephone number—but, contrary to Liberty's contention, Katz has not. Liberty contends Hinkley should be open to discovery in this case because she "joins her husband as a

---

[13] Nothing precludes a person from having two residential telephone lines under the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, 18 FCC Rcd. 14014, 14038, ¶33 (July 3, 2003) ("nothing in [the TCPA] suggest[s] that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA").

Non-Party's Memorandum for Protective Order        6

Plaintiff in TCPA lawsuits." (Preston Decl. ¶26.) Hinkley had almost nothing to do with the *Royal Seas* lawsuit; the fact that she was once included as a plaintiff in one of Katz's lawsuits does not mean she is treated as a litigant for any lawsuit he might bring. (Hinkley Decl. ¶5.) Again, to the extent relevant, it is more efficient to depose Katz on this point.

Liberty contends Hinkley can testify about Katz's allegations that he found Liberty's "calls to be intrusive and harassing, as they diverted attention away from his daily activities." (Preston Decl. ¶26.) This is another red herring, though: the TCPA provides for statutory damages. The TCPA provides for statutory damages, and Katz only needs to prove a statutory violation to establish standing under the TCPA. *See Gibbs v. Solar City Corp.*, 239 F. Supp. 3d 391, 395-396 (D. Mass. 2017) (collecting cases). As Katz only seeks statutory damages, evidence of actual damages is irrelevant. *See Molski v. Franklin*, 222 F.R.D. 433, 438 (S.D. Cal. 2004) (granting protective order precluding evidence of actual damages, where plaintiff limited claims to statutory damages).

Hinkley's deposition is also unlikely to benefit the Massachusetts case because most or all of the information Liberty wants from Hinkley comes from privileged communications with Katz. (Hinkley Decl. ¶6.) The "common law marital communications privilege . . . protects the confidentiality of private communications made between spouses during their marriage." *United States v. Wood*, 924 F.2d 399, 401 (1st Cir. 1991). Liberty's counsel suspects this privilege would not cut off much testimony, but offered no basis for this speculation. (Preston Decl. ¶26.) It is hard to see any such basis: "marital communications are presumed to be confidential," *Pereira v. United States*, 347 U.S. 1, 6 (1954), and the privilege extends to communicative acts, *United States v. Bahe*, 128 F.3d 1440, 1443 (10th Cir. 1997). The presence of Hinkley's infant

children—all under four years old—would not change this presumption.[14] (Hinkley Decl. ¶2.) Subjecting Hinkley to a deposition that amounts to seven hours of counsel arguing over the application of marital communication privilege is simply not productive, and is an undue burden.

In sum, Liberty's rationales for deposing Hinkley boil down to a speculative search for testimony that might contradict or undermine Katz. (*See* Preston Decl. ¶22.) The fact that Liberty has pressed hard for Hinkley's deposition, while canceling and then letting Katz's deposition to lie fallow, tells the Court a great deal about Liberty's discovery priorities. "Discovery is not a fishing expedition; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed." *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) (citations, punctuation omitted). Speculation about what Katz might testify to, and how Hinkley might undermine that testimony, does not justify deposing Hinkley. *Heidelberg*, 333 F.3d at 41-42 ("A litigant may not engage in merely speculative inquiries in the guise of relevant discovery"; quoting *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990)). Courts previously rejected similar speculation as a basis for deposing a party's spouse:

> Despite the fact that plaintiffs have yet to depose defendant, counsel sought to justify the subpoena on the speculation that defendant's wife might offer testimony inconsistent with defendant's possible future version of the facts, and that she might have witnessed unspecified events [relevant to the case.] We have concluded that the explanations offered are pretexual, and that the subpoena is being served to harass and embarrass defendant and his wife.

*McCarthy*, 2003 WL 21145573, at *1. This is consistent with other case law in and out of this Circuit. *See also Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or

---

[14] *See* 25 Charles Alan Wrigh & Arthur R. Miller, Federal Practice and Procedure § 5577 n.106 (1st ed. 2018) (citing *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998) for proposition that "presence of infant children does not destroy privilege"). *Cf. Wolfle v. United States*, 291 U.S. 7, 17 (1934) (marital communication "voluntarily made in the presence of their children, *old enough to comprehend them* . . . are not privileged"; emphasis added).

Non-Party's Memorandum for Protective Order        8

defenses"; collecting cases).

### III. The Court Should Grant Hinkley Relief from the Deposition Subpoena

Hinkley seeks relief from Liberty's deposition and from further discovery by Liberty. Rule 45 requires the Court to quash the deposition; Rule 26(c) broadly authorizes the other remedies Hinkley seeks. "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Gill*, 399 F.3d at 402 (citation, punctuation omittted).[15]

#### A. The Court Should Quash the Deposition and Restrict Future Discovery

Hinkley's favored relief is the most straightforward. Hinkley asks the Court for the same relief provided in *McCarthy*: quash the deposition subpoena, and order Liberty "not to attempt to serve another such subpoena on [Hinkley or her family] without prior court approval. Any such application is to be made only after the completion of the depositions of [Katz]." *McCarthy*, 2003 WL 21145573, at *1. Prospective relief is necessary given Liberty's propensity for multiple, duplicative subpoenas.

#### B. In the Alternative, the Court Should Require Liberty to Take Hinkley's Deposition by Telephone

In the alternative, if the Court decides to permit Hinkley's deposition, Hinkley moves for an order (1) deferring her deposition until after Katz's deposition; and (2) requiring Liberty to take Hinkley's deposition telephonically. Liberty should have to take Katz's deposition first so there is at least a sufficient record for the Court to determine whether Hinkley's deposition is actually necessary after all. Likewise, Rule 30 provides "that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4).[16] Court have found that where a movant gives

---

[15] *See Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 127 (E.D. Pa. 1994) (court "use its discretion to decide what particular restrictions may be necessary").

[16] "This provision formerly appeared in Rule 30(b)(7)." *Clinton v. California Dep't of Corrections*, No. 05-1600, 2009 WL 210459, *3 n.6 (E.D. Cal. Jan. 20, 2009). *See also* Fed. R. Civ. P. 30(b) advisory committee note for 1993 amendment.

"a legitimate reason for taking a deposition telephonically, . . . the burden is on the opposing party to establish why the deposition should not be conducted telephonically." *Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986).[17] *See also Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 522 (D.C. Cir. 1975) (court may "deny [motion under] Rule 30(b)(4) only when [court] is convinced . . . that the particulars of the request do not reasonably ensure accuracy equivalent to stenographic depositions"). Telephonic depositions are vastly more efficient than having Hinkley and multiple counsel travel to Bangor—especially as resolving privilege issues might require a court order and another deposition—and better serve the purposes of the Federal Rules to secure the just, speedy, and inexpensive determination of every action and proceeding.[18] The absence of "face-to-face questioning" is inherent in any telephonic deposition; if that were a valid basis for refusing telephonic depositions, it "would be tantamount to repealing" Rule 30(b)(4). *Jahr*, 109 F.R.D. at 432 (followed by *Cressler v. Neuenschwander*, 170 F.R.D. 20, 22 (D. Kan. 1996)).[19]

## IV. Conclusion

When one assesses the totality of the record, it is plain that Liberty's notice of deposition to Hinkley is not consistent with Rule 26 or 45. The Court should quash Liberty's notice of deposition, and grant the other relief sought by Hinkley (including fees and expenses, consistent with the Motion).

---

[17] *See Brown v. Carr*, 253 F.R.D. 410, 412 (S.D. Tex. 2008) (where movant establishes "legitimate reason" for remote deposition, the opposing party "has the burden to establish good cause as to why they should not be conducted in such manner"; collecting cases); *United States v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 629 (S.D. Cal. 2001) (citing *Jahr* for propostion that "burden [is] on the party opposing telephonic deposition after a showing of legitimate reasons for taking a deposition telephonically"; citing other cases for same proposition); *Rehau, Inc. v. Colortech, Inc.*, 145 F.R.D. 444, 446-47 (W.D. Mich. 1993) (quoting, following *Jahr*).

[18] *See Brown*, 253 F.R.D. at 413 ("deposition by video conference would be less expensive, and would aid in the administration of justice"; punctuation citation omitted); *Zane S. Blanchard & C., Inc. v. PSPT Ltd.*, No. 92-660, 1995 WL 17211932, *7 n.8 (D.N.H. May 18, 1995) ("telephonic depositions may . . . operate 'to secure the just, speedy, and inexpensive determination of [the instant] action,'" and represent "common-sense approach [which can] ameliorate . . . concerns of burden and expense"; quoting Fed. R. Civ. P. 1; granting protective order against party depositions in New Hampshire).

[19] *See Estate of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 389 (S.D.N.Y. 2011) ("Telephone depositions create issues that in-person depositions do not, and yet . . . are a presumptively valid means of discovery"; citation, punctuation omitted).

Dated: August 30, 2018       By:      /s/Judy Potter
                                       Judy Potter, Esq.
                                       Bar No. 694
                                       Law Offices of Judy Potter P.A.
                                       356 Spurwink Avenue
                                       Cape Elizabeth, Maine 04107
                                       Telephone: (207) 799-5453
                                       Facsimile: (207) 799-8119
                                       judy356@msn.com

                                       Yitzchak H. Lieberman (pro hac vice pending)
                                       Grace E. Parasmo (pro hac vice pending)
                                       Parasmo Lieberman Law
                                       7400 Hollywood Boulevard, Suite 505
                                       Los Angeles, California 90046
                                       Telephone: (917) 657-6857
                                       Facsimile: (877) 501-3346

                                       Ethan Preston (pro hac vice pending)
                                       Preston Law Offices
                                       4054 McKinney Avenue, Suite 310
                                       Dallas, Texas 75204
                                       Telephone: (972) 564-8340
                                       Facsimile: (866) 509-1197

                                       *Attorney for Movant*