UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHELBY HINKLEY,<br><br>              Movant,<br>    v.<br><br>LIBERTY POWER CORP., LLC,<br>LIBERTY POWER HOLDINGS, LLC,<br>Delaware limited liability companies,<br><br>              Respondents. | DECLARATION OF ETHAN PRESTON SUPPORTING MOVANT SHELBY HINKLEY'S MOTION FOR PROTECTIVE ORDER |

**DECLARATION OF ETHAN PRESTON**

ETHAN PRESTON hereby declares:

1.     My name is Ethan Preston. I am over the age of eighteen and am fully competent to make this declaration. I am one of the attorneys representing Shelby Hinkley ("Hinkley") with respect to the subpoenas described in this Declaration. I have personal knowledge of all of the facts set forth in this declaration and could testify thereto if called to do so, except where specifically stated otherwise.

**The Litigation in the Issuing Court Between Hinkley's Spouse and Liberty Power**

2.     **Hinkley's Spouse Sued Liberty Power:** On or about March 16, 2018, Samuel Katz ("Katz"), Hinkley's spouse, filed a lawsuit against Liberty Power Corp., LLC and Liberty Power Holdings, LLC (collectively, "Liberty") in the United States District Court for the District of Massachusetts, which alleged Liberty Power and/or their agents violated of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations (including 47 C.F.R. § 64.1200) ("TCPA"), with respect to calls in September and October 2016. (*See* Class Action Complaint and Jury Demand, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. Mar. 16, 2018), ECF No. 1.)

3. Hinkley's motion for protective order and this supporting Declaration relate to subpoenas that Liberty issued from the United States District Court for the District of Massachusetts in the course of Katz's TCPA lawsuit pending before that court against Liberty.

**Liberty Takes Extensive Discovery from Katz**

4. **Liberty Serves Broad Written Discovery on Katz:** On May 23, 2018, Liberty served its first sets of Interrogatories and Requests for Production of Documents. Liberty's first sets of written discovery include 22 Interrogatories and 18 Requests for Production. A true and correct excerpt of Liberty's first set Requests for Production of Documents are attached to this Declaration as Exhibit 1.

5. **Liberty Sets Katz's Deposition for July 27:** On June 5, 2018, Liberty served a notice of deposition on Katz for July 20, 2018. On June 8, 2018, Liberty and Katz agreed to reschedule Katz's deposition for July 27, 2018. On June 13, 2018, Liberty served an amended notice of deposition on Katz.

6. **Katz Provides Extensive Written Discovery Responses:** On July 3, 2018, Katz responded to Liberty's first set of Requests for Production of Documents and other written discovery. Because most of Liberty's Requests for Production of Documents were overbroad and otherwise objectionable, Katz and his counsel expended significant time and effort in responding to these requests. Responding to Liberty's May 2018 written discovery requests occupied a significant portion or the majority of the working time of several of Katz's counsel between May 23, 2018 and July 3, 2018. Even when Katz objected to Liberty's discovery and did not provide a substantive result, Katz's counsel still researched the validity of Katz's objections and "state[d] with specificity the grounds" for the objections, consistent with the requirements of Rule 34(b)(2)(B). Consequentially, Katz's responses to Liberty's first sets of Interrogatories and

Requests for Production of Documents run to 73 pages and 62 pages, respectively. Moreover, on July 3, 2018, Katz produced over seven thousand pages of documents to Liberty (KATZ000001-KATZ007611), including an audio recording, labeled KATZ000183.

7. **District of Massachusetts Orders Extension for Katz to Oppose or Otherwise Respond to Pending Motion to Dismiss:** On June 26, 2018, Katz and Liberty filed a joint motion to extend Katz's deadline to respond to Liberty's then-pending motions to dismiss and to bifurcate discovery. (*See* Joint Motion for a One Week Extension of Time for Plaintiff's Responses to Defendants' Pending Motions, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. June 26, 2018), ECF No. 31.) The motion asked "for the entry of an Order continuing Plaintiff's deadline to oppose **or otherwise respond to Defendants' pending motions** (ECF Nos. 26, 29) up to and through July 16, 2018." The United States District Court for the District of Massachusetts granted that motion. (*See* Minute Order, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. June 29, 2018), ECF No. 32 (emphasis added).)

8. **Liberty Cancels Katz's July 27 Deposition:** On July 16, 2018, at around 2pm Central Time, Liberty indicated it would reschedule Katz's deposition to provide it time to resolve disputes concerning Katz's written discovery responses prior to taking Katz's deposition. To date, Liberty has not sought to reschedule Katz's deposition.

**Katz Files an Amended Complaint with Over 600 Complaints Against Liberty**

9. **Katz's Files an Amended Complaint:** Later that day (July 16), Katz filed an amended complaint as a matter of course under Federal Rule 15(a)(1)(A). (First Amended Class Action Complaint and Jury Demand, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. July 16, 2018), ECF No. 34.) The amended complaint added two new plaintiffs, expanded allegations about Liberty's relationship with its vendors, and added a summary of over 600

complaints about Liberty's telemarketing practices obtained from the Federal Trade Commission's consumer complaint database. (Exhibit 1 to First Amended Class Action Complaint and Jury Demand, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. July 16, 2018), ECF No. 34-1.) A true and correct copy of the amended complaint and its exhibit are attached to this Declaration as Exhibit 2.

      10.    **Massachusetts Court Denies Liberty's Motion to Dismiss as Moot:** On July 16, 2018, Katz filed an opposition to Liberty's motion to dismiss the complaint, which pointed out that the amended complaint mooted the motion to dismiss. (Plaintiff's Opposition to Defendants' Partial Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1), *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. July 16, 2018), ECF No. 35.) Within minutes of Katz filing his opposition, the United States District Court for the District of Massachusetts entered a minute order "finding as moot [26] Motion to Dismiss for Lack of Jurisdiction." (*See* Minute Order, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. June 29, 2018), ECF No. 32.)

**Liberty Retaliates Against Katz's Amended Complaint**

      11.    **Liberty Retaliates:** Immediately after Katz filed the amended complaint, Liberty began a course of conduct which counsel can only infer was intended to intimidate Katz and to retaliate for filing the amended complaint with the complaint data from the FTC. However, some of Liberty's subsequent communications directly suggest animus towards the amended complaint. On July 18, 2018, Liberty's counsel sent an email which objected to Katz's amended complaint, stating in relevant part: "None of you told us that you were using the time you had, and the extra time we agreed to, to amend the complaint, including adding two new plaintiffs as well as additional factual allegations," and that this disrupted the orderly resolution of its motion

to bifurcate discovery. During a July 26, 2018 meet and confer described further below, Liberty's counsel expressed the view that Katz improperly filed the amended complaint. On July 31, 2018, Liberty's counsel referred to Katz's "surreptitious first amended complaint" in an email.

14. **Liberty Sues Katz in Florida:** On July 17, 2018, Liberty's counsel sent an email threatening to bring a lawsuit which alleged Katz violated Florida law by recording a telephone call from Florida which Katz received in Maine. A true and correct excerpt of an email chain containing this July 17 email, together with other emails relevant to this Declaration discussed below, is attached to this Declaration as Exhibit 3.

13. Ultimately, on July 27, 2018, Liberty sued Katz in Florida state court in Broward County. A true and correct excerpt of that lawsuit is attached to this Declaration as Exhibit 4. Counsel expect Katz to defend that lawsuit vigorously.

14. **Liberty Threatens Claims Against Katz's Counsel:** On July 18, 2018, Defendants counsel sent another email which alleged claims against Plaintiffs' counsel. The July 18 email stated that Florida law prohibited intentionally disclosing or using the contents of any wire communication, and quoted paragraph 59 of Plaintiffs' original complaint and paragraph 67 of the amended complaint (referring to a telephone call between Katz and Liberty's employee). (*Id*. at 1.) The July 18 email further stated:

> Relative to Florida unlawful recording law, we are doing our due diligence <u>on **another potential complaint**</u>. . . . It appears that Mr. Katz "intentionally disclose[d]" the "contents" of his illegally recorded conversation with Garson Knapp to, at the least, his counsel and <u>**his counsel then "intentionally disclose[d]" and/or "intentionally use[d]" the "contents" of those illegally recorded calls in the complaint**</u>, and perhaps in other ways.

(*Id*. at 1, 2 (emphasis added).) Lastly, the July 18 email identified the recording which was the basis for Liberty's claims as the audio recording labeled KATZ000183. (*Id*. at 2.) On August 15,

Preston Declaration for Motion for Protective Order     5

however, Liberty's counsel sent an email to Katz's counsel which stated "you have previously inaccurately accused Liberty of threatening to turn Mr. Katz's counsel in this proceeding into defendants." Liberty has never explained the language from the July 18 email emphasized above did not constitute a threat to sue Katz's counsel, or how Katz's counsel supposedly misconstrued that language.

15. **Liberty's First Subpoena to Hinkley:** On or about July 20, 2018 Defendants served Katz's counsel with a notice of subpoena to Shelby Hinkley, Katz's spouse ("First Subpoena"). A true and correct copy of the First Subpoena is attached to this Declaration as Exhibit 5, except that the residential address and telephone numbers have been redacted. The subpoena demands the following documents:

1. All documents, including, but not limited to, service provider contracts, bills, call logs, and audio recordings, from March 2014 to March 2018, referring to the following telephone numbers: 508-966-XXXX, 508-966-XXXX, 978-877-XXXX, and 617-997-XXXX.

2. All documents referring to the internet service provider you used in 2016.

3. All documents referring to any lawsuit you have been involved with, whether as a party or witness or otherwise (e.g., third-party subpoena recipient).

4. All documents, including but not limited to, any and all correspondence and emails, referring to the facts, matters, circumstances or allegations of the underlying claims included in the above-captioned Complaint. This request includes documents referring to Samuel Katz.

5. All documents referring to Lynne Rhodes.

6. All documents referring to Alexander Braurman.

7. All documents regarding Katz v. Royal Seas, Inc., No. 1666-CV-000158 (Mass. Tr. Court, Milford Dist. Ct. Div.).

8. All documents relating to the facts, matters, and circumstances regarding your physical location on September 8, 2016.

(Ex. 5 at 7.)

16. **The First Subpoena Overlaps Defendants' Existing Discovery:** The First Subpoena largely overlaps Liberty's written discovery to Katz. Liberty's first set of Requests for Production includes requests for:

> 4. All documents relating to other lawsuits filed by Plaintiff or involving Plaintiff.
>
> 9. All documents, including, but not limited to, any and all correspondence and emails, relating to the facts, matters, circumstances or allegations of the underlying claims included in the Complaint.
>
> 10. All documents, including, but not limited to, service provider contracts, bills, and audio recordings, from March 2014 to March 2018, related to the following telephone numbers: 508-966-XXXX, 508-966-XXXX, 978-877-XXXX, and 617-997-XXXX.
>
> 11. All documents relating to your Internet service provider(s) from March 2014 to present.

(Ex. 1 at 5-6.) Likewise, Defendants' Interrogatories included the following queries:

> 9. Identify the company or companies who, at any time from March 2014 to March 2018 provided service, whether cellular, data, or otherwise, to Plaintiff for each of the following telephone numbers: 508-966-XXXX, 508-966-XXXX, 978-877-XXXX, and 617-997-XXXX.
>
> 14. Identify all lawsuits Plaintiff has ever been a party to or participated in (as a witness or otherwise), including the title of the lawsuit, the case number, the court, the name of any attorney representing Plaintiff, and the resolution of the lawsuit.
>
> 19. Identify any person with whom you spent any time with on September 8, 2016.
>
> 20. Identify your Internet service provider(s) from March 2014 to present.

17. **Hinkley Objects to the First Subpoena:** On August 2, 2018, Hinkley served her objections to the First Subpoena. A true and correct copy of Hinkley's objections to the First Subpoena is attached to this Declaration as Exhibit 6, except that telephone numbers have been

redacted.

18. **Defendants' Second Subpoena:** Four days after Hinkley served her objections, on or about August 6, 2018, Defendants served Katz's counsel with a notice of subpoena to be served on Hinley ("Second Subpoena"). A true and correct copy of the First Subpoena is attached to this Declaration as Exhibit 7, except that the residential address and telephone numbers have been redacted. The Second Subpoena noticed Hinkley's deposition and requested that Hinkley produce documents at the deposition, in particular:

1. All service provider contracts, bills, account statements, call logs, audio recordings, and call notifications from 2016 for following telephone numbers: 508-966-XXXX, 508-966-XXXX, 978-877-XXXX, and 617-997-XXXX.

2. All internet account statements and contracts for the internet service provider(s) you used at your residence in 2016.

3. All documents from any lawsuit in which you were a party, a witness, were a subpoena recipient, provided testimony, or provided documents.

4. All written communications between you and Samuel Katz referring to the above-captioned lawsuit. If you choose to assert privilege, please provide a privilege log.

5. All documents with the name Lynne Rhodes.

6. All documents with the name Alexander Braurman.

7. All documents with the case caption Katz v. Royal Seas, Inc., No. 1666-CV-000158 (Mass. Tr. Court, Milford Dist. Ct. Div.). This request includes interrogatories responses for all parties, document request responses for all parties, and responses to requests for admission for all parties.

8. Any document that is relevant to your physical location September 8, 2016.

9. All written communications between you and Samuel Katz regarding the Telephone Consumer Protection Act prior to your date of marriage. This request includes email communications regarding lawsuits Mr. Katz was a party to.

(Ex. 7 at 4.)

19. **Second Subpoena Largely Duplicates the First Subpoena:** The documents requested in the Second Subpoena were virtually the same set of documents such in the First Subpoena, subject to some adaption to Hinkley's objections to the First Subpoena. On August 20, 2018, Hinkley served her objections to the Second Subpoena. A true and correct copy of Hinkley's objections to the First Subpoena is attached to this Declaration as Exhibit 8, except that telephone numbers have been redacted. Hinkley did not produce any documents in response to the First or Second Subpoena because Katz had already produced any documents (KATZ000001-KATZ007611) which were non-objectionable.

20. **Liberty Seeks to Inspect Hinkley and Katz's Residence:** On or about August 8, 2018, Liberty served Katz's counsel with a subpoena for inspection of Katz and Hinkley's residence in Maine for the purpose of inspecting Katz's telephones ("Inspection Subpoena"). A true and correct copy of the Inspection Subpoena is attached to this Declaration as Exhibit 9, except that the residential address has been redacted. The Inspection Subpoena requests:

> Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, photograph, test, or sample the property or any designated object or operation on it.
>
> Place: XXXXXXX Street, XXXXXX: Maine 04425 to inspect and photograph Samuel Katz's residential and cellular telephone

On August 20, 2018, Katz served amended objections to the Inspection Subpoena. A true and correct copy of the objections is attached to this Declaration as Exhibit 10, except that the residential address has been redacted.

21. **Liberty Files an Oversize Motion to Dismiss:** On August 3, 2018, Liberty filed

a thirty-five (35) page motion to dismiss Katz's amended complaint, which asserts, e.g., that the TCPA is unconstitutional. (*See* Defendants Liberty Power Corp., LLC's and Liberty Power Holdings, LLC's Memorandum of Points and Authorities in Support of Their Consolidated Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. August 3, 2018), ECF No. 56.) This is nearly double the twenty (20) page limit on memoranda in the District of Massachusetts. D. Mass. L.R. 7.1(b)(4).

**Hinkley's Counsel Meets and Confers With Liberty's Counsel**

22. **First Meet and Confer Regarding Subpoenas to Hinkley:** On July 24, 2018, at 1 pm Central Time, counsel for Katz and Liberty met and conferred telephonically for two hours. During the July 24 meet and confer, Katz's counsel advised that the First Subpoena was improper, while Liberty's counsel indicated they planned to serve another subpoena on Hinkley to take her deposition. Liberty's counsel attempted to justify the subpoenas to Hinkley by citing (1) unspecified discrepancies in her testimony from another lawsuit (apparently, *Katz v. Royal Seas, Inc.*, No. 1666CV000158 (Mass. Tr. Court, Milford Dist. Ct. Div.)), and (2) the possibility that Hinkley's testimony would undermine or contradict Katz's testimony in unspecified ways. I am not aware that Hinkley has ever given testimony in any case. Katz's counsel advised Liberty's counsel that they expected any testimony Hinkley might have which might possibly be relevant would be subject to the marital communication privilege. Liberty's counsel said he had suspicions that this was not the case. Counsel did not come to any agreement regarding Liberty's subpoenas to Hinkley. At the end of the July 24 conference, Liberty's counsel proposed that the parties negotiate an individual (i.e., non-class) settlement.

23. **Katz Files a Discovery Letter with the District of Massachusetts:** On July 26, 2018, Katz filed a letter with the United States District Court for the District of Massachusetts

which stated Plaintiffs' position on the parties' dispute over the First Subpoena and Liberty's plan to depose Hinkley. (Letter from Plaintiffs' Counsel to the Court, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. July 26, 2018), ECF No. 48.) A true and correct excerpt of the July 26 letter is attached to this Declaration as Exhibit 11.

24. On July 27, 2018, Liberty filed a letter with the District of Massachusetts which indicated Liberty would respond substantively on August 9, 2018, and that "[i]n the interim, Defendants will continue the meet-and-confer process with Plaintiffs in an attempt to resolve and/or narrow any potential disputes." (Letter from Liberty Power's Counsel to the Court, *Katz v. Liberty Power Corp., LLC*, No. 18-10506 (D. Mass. July 27, 2018), ECF No. 50.) A true and correct excerpt of the July 27 letter is attached to this Declaration as Exhibit 12.

25. **No Progress at Second Meet and Confer:** On August 1, 2018, at 1 pm Central Time, counsel for Katz, Hinkley, and Liberty met and conferred telephonically for an hour on a variety of other issues. Notwithstanding Liberty's July 27 letter, Liberty did not address the subpoenas to Hinkley in that August 1 telephone call.

26. **Liberty Responds to Katz's July 26 Letter:** On August 9, 2018, Liberty filed a letter with the United States District Court for the District of Massachusetts which stated Liberty's position on the dispute over the Hinkley subpoenas. (Letter from Plaintiffs' Counsel to the Court, *Katz v. Liberty Power Corp., LLC,* No. 18-10506 (D. Mass. July 26, 2018), ECF No. 48.) A true and correct excerpt of the August 9 letter (with certain exhibits) is attached to this Declaration as Exhibit 13, except that telephone numbers have been redacted. The August 9 letter sets forth Liberty's justification for deposing Hinkley:

> Mr. Katz has at least five telephone numbers: two cellular, 774-462-XXXX, 617-997-XXXX; two Verizon FIOS landlines, 508-966-XXXX, 508-966-YYYY, and a Google Voice number, 978-877-XXXX. Mr. Katz's wife can explain why her household has two VoIP landline telephone numbers, and why both of those VoIP

> telephone numbers are used almost entirely as a call forwarding telephone number to the Google Voice number.
>
> Mr. Katz's wife was a co-Plaintiff with Mr. Katz in lawsuit alleging violations of the TCPA filed in Commonwealth of Massachusetts. Katz v. Royal Seas, Inc., No. 1666-CV-000158 (Mass. Tr. Court, Milford Dist. Ct. Div.). Exhibit 5, KATZ 004335-004342. In that lawsuit, she alleges she owns and control telephone numbers that are also the subject of this lawsuit. Id. ¶ 5. She further alleges, contradictorily, that telephone numbers that are the subject of this lawsuit are both cellular telephones and landlines. Id. ¶¶ 5, 22-23. Plaintiffs' cannot argue discovery regarding Plaintiff Katz's wife, who joins her husband as a Plaintiff in TCPA lawsuits, will have a "chilling effect" on Plaintiff Katz.
>
> In addition, Mr. Katz alleges he suffered damages as a result of the alleged calls because they were intrusive and harassing, and diverted his attention away from his daily activities. First Am. Compl. ¶ 66, ECF No. 34. Mr. Katz's wife can provide testimony regarding this.
>
> Furthermore, Mr. Katz provided contradictory testimony under oath, possibly perjuring himself. In prior sworn testimony signed approximately three months prior to filing this lawsuit, he claimed that his residential phone number was [978-877-XXXX]. Exhibit 6, KATZ 004196. In this lawsuit, he now claims as his residential phone number is 508-966-XXXX. Mr. Katz's wife can provide information on what telephone number(s) are Plaintiff Katz's actual residential telephone number.

(Ex. 12 at 6-7.)

27. **Liberty Already Has An Explanation for Katz's Telephone Numbers:** On August 4, 2018, Liberty's counsel emailed a portion of a transcript of Samuel Katz's September 14, 2016 deposition taken in *Katz v. American Honda Motor Co.*, No. 15-04410, in the United States District Court for the Central District of California. Below is a redacted excerpt of relevant portions of the transcript from Katz's deposition in *American Honda*, which provides a detailed description of the different telephone numbers cited by Liberty above:

> Q. Do you have a land line at your current residence?
>
> A. Yes.
>
> Q. And what's the telephone number for your land line?

A. (508) 966-XXXX.

Q. Any other land line numbers for your --

A. Yes.

Q. What other number?

A. (508) 966-YYYY.

Q. Any other land lines?

A. No.

Q. Is either the [(508) 966-XXXX] (sic) or the [(508) 966-YYYY] line dedicated to business?

A. No.

Q. Do you use either one of those lines for business?

A. No.

Q. What number do you use for business?

A. I have a cell phone provided to me by my employer.

Q. What's the number of that cell phone?

A. It's confidential information.

Q. We're happy to keep it confidential.

A. (774) 462-XXXX.

Q. Is that the number you use strictly for business?

A. Yes.

Q. Any other telephone numbers that you use?

A. Yes. I have a Google voice number that is my original cell phone number. It's (978) 877-XXXX.

Q. I'm sorry. I'm not familiar. What is a Google voice number?

> A. It's a phone number that is linked to my Google account, and I retained that phone number when I switched when I got a new phone number so that people that still had my old number would still be able to contact me.
>
> . . .
>
> Q. You have a cell phone number, correct, the one that's at issue in this case?
>
> A. Yes.
>
> Q. What's that number?
>
> A. (617) 997-XXXX.

(Katz Depo Tr., Sept. 14, 2016 at 17:6-19:22; 20:21-25.) In fact, the portion of the *America Honda* transcript emailed by Liberty's counsel included unredacted information (the complete (774) 462-XXXX number), which was subject to a stipulated protective order in the *American Honda Motor Co.* case. Katz's counsel queried where Liberty had obtained that transcript. The email exchange between counsel regarding the true and correct excerpt of the email chain containing the resulting exchange is attached to this Declaration as Exhibit 14. I summarize the exchange below (all time designated are Central Time zone):

| | | |
|---|---|---|
| 6:44 AM Katz: | | We need to know how you obtained the deposition transcript from the Honda case. There was a stipulated protective order in that case, KATZ 000619-32, and it is obvious from the transcript itself that Mr. Katz's telephone number was confidential. Please advise. |
| 6:46 AM Liberty: | | You produced it. |
| 6:59 AM Katz: | | No . . . That's not right. We produced the public filings. There is no ECF stamp. |
| 7:12 AM Liberty: | | I'm not sure that it matters where I got it, or that I have any obligation to tell you anything about my work product. |

28. **Third Meet and Confer Regarding Subpoenas to Hinkley:** On August 22, 2018, at around 2:30 pm Central Time, counsel for Katz, Hinkley, and Liberty briefly met and conferred by telephone. Counsel for Hinkley and Katz indicated that they intended to file

motions for protective orders regarding various subpoenas served by Liberty, and discussed various possibilities for narrowing those subpoenas. Counsel did not make progress with respect to the First or Second Subpoena above.

29. **Certification:** Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 28, 2018          By:          /s/Ethan Preston
                                              Ethan Preston