# EXHIBIT 10

Exhibits to Preston Declaration

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL KATZ, ALEXANDER BRAURMAN, LYNNE RHODES, individually, and on their own behalf and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>LIBERTY POWER CORP., LLC, LIBERTY POWER HOLDINGS, LLC, Delaware limited liability companies,<br><br>　　　　　　Defendants. | No. 1:18-cv-10506<br><br>**PLAINTIFF SAMUEL KATZ'S AMENDED RESPONSE TO DEFENDANT LIBERTY POWER CORP., LLC AND LIBERTY POWER HOLDINGS, LLC'S AUGUST 8, 2018 SUBPOENA** |
| LIBERTY POWER CORP., LLC, and LIBERTY POWER HOLDINGS, LLC,<br><br>　　　　　　Third-Party Plaintiffs,<br>　v.<br><br>MEZZI MARKETING, LLC,<br><br>　　　　　　Third-Party Defendant. | |

Pursuant to Federal Rule of Civil Procedure 34 and 45, Plaintiffs Samuel Katz, Alexander Braurman, and Lynne Rhodes ("Plaintiffs"), hereby respond to Defendants Liberty Power Corp., LLC and Liberty Power Holdings, LLC's August 8, 2018 Subpoena (the "Subpoena") to Plaintiff Samuel Katz. Plaintiffs' responses below are limited to what is required by Federal Rule 34 and 45. Plaintiffs' responses are based on the information and facts available to them as of the date of these responses. Plaintiffs have not completed their discovery and investigation in this action and reserve the right to amend these responses, pursuant to Rule 26(e) and Rule 36(b). Plaintiffs reserve the right to object to the admissibility of these responses and any corresponding supplemental discovery response.

### General Objections

The following general objections ("General Objections") are incorporated by reference

into the responses to the Subpoena below.

1. These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections and grounds that would require the exclusion of such evidence if such evidence were offered in court, all of which objections and grounds are reserved, and may be interposed at the time of trial or otherwise.

2. Plaintiff objects to the Subpoena to the extent that it seeks to impose requirements or obligations in excess of the scope of permissible discovery authorized by the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the District of Massachusetts, or other any applicable court order or local rule. In particular:

    a. Plaintiffs object to the Subpoena because Plaintiff Samuel Katz is a party and the use of the Subpoena to obtain discovery against a party is inconsistent with various provisions and protections of Federal Rule of Civil Procedure 34. Defendants cannot use subpoenas issued under Rule 45 as a substitute for a request for production of documents under Rule 34, or to evade the restrictions, limitations, or provisions applicable to such requests. *See Hasbro, Inc. v. Serafino*, 168 F.R.D. 99 (D. Mass. 1996); L.R. 26.1(c). Therefore, Plaintiffs construe the Subpoena as Defendants' second set of Requests for Production of Documents. Plaintiffs further object to the Subpoena because Defendants' improper use of Rule 45 against a party creates unfair uncertainty over the deadline to object and respond to the Subpoena. Plaintiffs are prejudiced by this uncertainty. In order to mitigate that prejudice, Plaintiffs make the objections in these

      responses, but reserve the right to make further objections once the Subpoena is definitively and properly categorized under the Federal Rule.

b.   Plaintiffs object to the Subpoena to the extent it purports to require a response with respect to claiming privilege beyond Rule 26(b)(5)(A), or paragraph 23 of the Court's May 25, 2018 Stipulated Protective Order (ECF No. 20.) "Details concerning time, persons, general subject matter, etc., . . . may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26(b) advisory committee notes on 1993 amendments (cited and followed in *Pub. Serv. Co. of NH v. Portland Nat. Gas*, 218 F.R.D. 361, 364 n. 3 (D.N.H. 2003)).

c.   Plaintiffs object to the extent that Subpoena purports to require the production of electronically stored information which (i) is not reasonably accessible, (ii) where it is possible for Defendants to obtain the same information from some other source that is more convenient, less burdensome, or less expensive; (iii) where the information is unreasonably cumulative or duplicative; (iv) where Defendants have had ample opportunity by discovery in the action to obtain the information sought; and/or (v) the likely burden or expense of producing the requested information outweighs the likely benefit, taking into account the amount in controversy, the resources of the parties, the importance of the issues in the litigation, and the importance of the requested information in resolving the issues. In particular, Plaintiffs object to producing electronically stored

information which is not in Plaintiffs' possession, but in the possession of third parties but where Plaintiffs are unaware of the existence of or their access to such information.

3. Plaintiffs further object to the extent that the Requests seek information subject to any privilege, including, but not limited to, the attorney-client privilege, the attorney work product doctrine, the common interest privilege, Rule 26(b)(3), Rule 26(b)(4), the associational privacy privilege against discovery under the First Amendment (or other right to privacy under the United States Constitution), or is otherwise protected from disclosure under the Federal Rules of Evidence, Federal Rules of Civil Procedure, or other applicable law. Any inadvertent production of any document or information shall not be deemed or construed to constitute a waiver of any rights or privileges pertaining to such documents or information or to any other documents or information, and Katz reserves the right to demand that Defendants return any such document and all copies thereof, and that Defendants destroy any materials that contain information derived from any such document.

Plaintiffs asserts attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with and among their counsel in this case and regarding this case, beginning on or about September 8, 2016 and continuing through to the present. Ethan Preston has more than 133 emails with other counsel regarding this case sent or received between September 8, 2016 and March 16, 2018; other counsel have still more. These communications all relate to the purpose of Plaintiffs' consultation with his counsel: litigating and obtaining relief on his individual and class claims against Defendants. These communications were all confidential. To the extent any of these communications included any individuals besides Plaintiffs and their counsel (such as experts,

consultants, investigators, and process servers/legal support service providers engaged by counsel), those individuals' presence either furthered the interest of Plaintiffs in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiffs' counsel was consulted.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with and among Plaintiff Samuel Katz's counsel in *Katz v. American Honda Motor Co. Inc.*, No. 15-04410 (C.D. Cal.), including Evan M. Meyers, Paul T. Geske, Suzanne Havens Beckman, and David C. Parisi, beginning on or about June 2015 and continuing through to approximately April 25, 2018. David Parisi estimates he has roughly 1,500 emails responsive to a keyword search for the *Honda* case. Plaintiff Samuel Katz's primary counsel for the *Honda* case, Evan Meyers, estimates he has between 2,000 to 3,000 emails responsive to a keyword search for the *Honda* case. Both Mr. Parisi and Mr. Meyers estimate that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel and/or among Plaintiff Samuel Katz's counsel in the *Honda* case, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as experts, consultants, investigators, and process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his individual and class claims against the defendants in the *Honda* case.

Plaintiffs assert attorney-client privilege and work product over all communications

(including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with and among Plaintiff Samuel Katz's counsel in *Slovin v. Sunrun, Inc.*, No. 15-05340 (N.D. Cal.), including David C. Parisi, Suzanne Havens Beckman, Shaun Lieberman, Grace Parasmo, and Ethan Preston, beginning in or about November 2015 and continuing through to the present. Plaintiff Samuel Katz's primary counsel for the *Sunrun* case, David Parisi, estimates he has over 10,000 emails responsive to a keyword search for the *Sunrun* case. All counsel involved estimate that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel and/or among Plaintiff Samuel Katz's counsel in the *Sunrun* case, or with others whose presence either furthered the interest of Plaintiff in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as experts, consultants, investigators, and process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his individual and class claims against the defendants in the *Sunrun* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with Plaintiff Samuel Katz's counsel in *Katz v. Starion Energy Inc.*, No. 16-40006 (D. Mass.), John Fink, beginning on or about June 2015 and continuing through to approximately October 2017. Mr. Fink estimates he has over 100 emails responsive to a keyword search for the *Starion* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation, or disclosure to

those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *Starion* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with Plaintiff Samuel Katz's counsel in *Katz v. American Frozen Foods, Inc.*, No. 1666CV000038 (Mass. Tr. Court, Milford Dist. Ct. Div.), John Fink, beginning on or about March 2016 and continuing through to June 2016. Mr. Fink estimates he has roughly 50 emails responsive to a keyword search for the *American Frozen Foods* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff and his counsel, or with others whose presence either furthered the interest of Plaintiff in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff's counsel was consulted (such as process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff's consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *American Frozen Foods* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with and among Plaintiff Samuel Katz's counsel in *Katz v. VSC3 LLC*, No. 1666CV000094 (Mass. Tr. Court, Milford Dist. Ct. Div.), including John Fink, beginning on or about April 2016 and

continuing through to the present. Plaintiff Samuel Katz's primary attorney in the *VSC3* case, John Fink, estimates he has roughly 50 emails responsive to a keyword search for the *VSC3* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *VSC3* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with Plaintiff Samuel Katz's counsel in *Katz v. Discount Power Inc.*, No. 1666CV000159 (Mass. Tr. Court, Milford Dist. Ct. Div.), John Fink, beginning on or about June 2016 and continuing through to the present. Mr. Fink estimates he has roughly 300 emails responsive to a keyword search for the *Discount Power* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his claims against the

defendants in the *Discount Power* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with Plaintiff Samuel Katz's counsel in *Katz v. Royal Seas, Inc.*, No. 1666CV000158 (Mass. Tr. Court, Milford Dist. Ct. Div.), John Fink, beginning on or about June 2016 and continuing through to October 2016. Mr. Fink estimates he has roughly 100 emails responsive to a keyword search for the *Royal Seas* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as experts, consultants, investigators, and process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *Royal Seas* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with his counsel in *Katz v. Harbro Sales and Service Inc.*, No. 1685CV01238 (Mass. Tr. Court, Worcester Sup. Ct. Div.), John Fink, beginning on or about August 2016 and continuing through to April 2018. Mr. Fink estimates he has roughly 130 emails responsive to a keyword search for the *Harbro* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation,

or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as experts, consultants, investigators, and process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *Harbro* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with Plaintiff Samuel Katz's counsel in *Katz v. John Doe*, No. 1666CV000284 (Mass. Tr. Court, Milford Dist. Ct. Div.), John Fink, beginning on or about October 2016 and continuing through to February 2017. Mr. Fink estimates he has roughly 40 emails responsive to a keyword search for the *Doe* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as experts, consultants, investigators, and process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *Doe* case.

Plaintiffs assert attorney-client privilege and work product over all communications (including emails, text messages, letters, paper/hard-copy, Word files, and pdf files) with Plaintiff Samuel Katz's counsel in *Katz v. Gagnon*, No. 1766CV000055 (Mass. Tr. Court,

Milford Dist. Ct. Div.), John Fink, beginning on or about February 2017 and continuing through to August 2017. Mr. Fink estimates he has roughly 80 emails responsive to a keyword search for the *Gagnon* case. Mr. Fink estimates that a majority or a very substantial portion of these emails and other communications took place between Plaintiff Samuel Katz and his counsel, or with others whose presence either furthered the interest of Plaintiff Samuel Katz in the consultation, or disclosure to those individuals was reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiff Samuel Katz's counsel was consulted (such as experts, consultants, investigators, and process servers/legal support service providers engaged by counsel). All such communications were confidential and for the purpose of Plaintiff Samuel Katz's consultation with his counsel: litigating and obtaining relief on his claims against the defendants in the *Gagnon* case.

Plaintiffs assert the attorney-client privilege, work product protection, common interest privilege, and the associational privacy privilege against discovery under the First Amendment over all communications (including emails, letters, paper/hard-copy, Word files, and pdf files) between their counsel and other persons contacted by Defendants or Defendants' agents and who have consulted with Plaintiffs' counsel regarding collective political action to petition the government regarding Defendants' TCPA violations, beginning on or about March 22, 2018 and continuing through to the present. These communications were all confidential and were reasonably necessary for the transmission of the information or the accomplishment of the purpose for which Plaintiffs' counsel was consulted.

Plaintiffs assert the attorney-client privilege, work product protection, and common interest privilege over all communications (including emails, letters, paper/hard-copy, Word files, and pdf files) between Plaintiffs' counsel in this case and other counsel litigating or

contemplating litigation against Defendants, beginning on or about May 1, 2018 and continuing through to the present. These communications all relate to a common interest in the purpose of Plaintiffs' consultation with their counsel: litigating and obtaining relief on TCPA claims against Defendants. These communications were all confidential, and were reasonably necessary for the transmission of the information or the advance of the common interest cited above.

Plaintiffs also assert work product protection over their counsel's selection of documents which are in the public record and/or which are available to the general public, including documents accessible and available to the public, such as Defendants' website, the websites of other witnesses, government websites (including the PACER system or equivalent websites for state court, securities filings, records of the United States Patent and Trademark Office, and the Copyright Office), the public record in any judicial and administrative proceeding, government publications, forms, reports, manuals, regulations, statutes or other laws, documents available through the Freedom of Information Act or state equivalents, UCC filings, corporate entity filings with the Secretary of State for any state (or equivalent filings), and records regarding title to and ownership of real property. Plaintiff's counsel has collected and gathered these some or all of these documents in anticipation of litigation, and the production of such documents will disclose which documents Plaintiff's counsel have selected for collection, which will tend to reveal the thoughts, strategies, and analyses of Plaintiff's counsel.

Plaintiff Samuel Katz has been married since at least November 20, 2015 and communicates with his spouse constantly, many times per day on most days. The vast majority of these communications are confidential, and Plaintiff asserts to the extent applicable any marital communication privilege, spousal privilege and/or spousal disqualification over these communications.

Plaintiff objects that the Subpoena is needlessly burdensome, harassing, and disproportionate to its likely benefit to the extent it purports to require Plaintiffs to provide details or information to assert privilege beyond what is set forth above.

3. Plaintiffs make no incidental or implied admissions with regard to the contents of these responses. The fact that Plaintiffs have responded or objected to all or part of the Subpoena, including those that use defined terms, does not constitute, and shall not be construed as, an admission that Plaintiffs accept or admit the existence of facts, including those incorporated in any definition, that may be alleged or assumed by the Subpoena.

4. Plaintiffs object that the Subpoena was not properly served under Rule 5. Plaintiffs have not consented to service by electronic means in writing, and such service is not proper or accepted by Plaintiffs. *Cf.* Fed. R. Civ. P. 5(b)(2)(E). Defendants did not serve the Subpoena properly under Rule 5(b)(2)(A) to (C). To clarify the record, Plaintiffs have only agreed to endeavor to provide courtesy copies to Defendants of discovery via email.

5. Discovery is not complete in this action. As discovery proceeds, facts, information, evidence, documents and things may be discovered that are not set forth in these responses, but which may have been responsive to the Subpoena. The following responses are based on Plaintiffs' knowledge, information and belief at this time and are complete as to Plaintiffs' best knowledge at this time. Furthermore, these responses were prepared based on Plaintiffs' good faith interpretation and understanding of the Subpoena and are subject to correction for inadvertent errors or omissions, if any. These responses are given without prejudice to subsequent revision or supplementation based upon any information, evidence and documentation that hereinafter may be discovered. Plaintiffs reserve the right to refer to, to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all

facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses.

6. Consequently, Plaintiffs object to the extent that the Requests purports to require an immediate production of any documents that may in Plaintiffs' control but not yet in their possession, or to an immediate production of documents that require translation, redaction, or extraction.

The objections set forth above are hereby incorporated in each individual response to the Subpoena set forth below, as if fully set forth, and shall be deemed to be continuing even though not specifically referred to in the responses below. No such objection is waived by answering the discovery request in whole or in part. Any response provided herein is subject to and limited by all General Objections stated herein.

### RESPONSES AND OBJECTIONS TO SUBPOENA

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS, OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION:

Inspection of Premises: YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, photograph, test, or sample the property or any designated object or operation on it.

Place: ▮▮▮▮▮▮▮▮▮ Dover-Foxcroft Maine 04425 to inspect and photograph Samuel Katz's residential and cellular telephones

### RESPONSE:

In addition to the General Objections set forth above, which are incorporated by reference herein, Plaintiffs object the inspection of the premises at ▮▮▮▮▮▮▮, Dover-Foxcroft Maine 04425 is needlessly burdensome, duplicative, invasive of the privacy of the residents at ▮

███████, and disproportionate to any possible benefit. Defendants have demonstrated no good cause or need for this inspection of the premises at ███████. *See Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904 (4th Cir. 1978). The premises in which Mr. Katz lives now is different than the premises he lived in at the time of the calls alleged in the Complaint. Therefore the inspection of the premises sought is entirely irrelevant to the case at hand. Further, the costs and invasion of privacy attendant the inspection entirely outweigh the any conceivable relevance of the photographs of Plaintiff Samuel Katz's telephones. Indeed, Plaintiffs object that photographing Plaintiff Samuel Katz's telephones is merely Defendants' pretext for conducting an inspection of the premises at ███████, Dover-Foxcroft Maine 04425, and that the Subpoena is intended to harass and intimidate Plaintiff Samuel Katz, to chill his representation of a TCPA class before the issuing Court. Nonetheless, as proposed compromise, Plaintiffs will consider creating and producing photographs of Plaintiff Samuel Katz's telephones to the extent it dispositively and finally moots all disputes over this Subpoena, Defendants agree to withdraw the Subpoena, and to never again serve any other subpoena or other discovery which seeks to inspect any premises or physical object in this case.

    Plaintiffs object that the phrase "inspect and photograph Samuel Katz's residential and cellular telephones" renders the Subpoena vague and ambiguous, and fails to give fair notice of the method and scope of inspection planned by Defendants, except to the extent the Subpoena is limited to interactions sufficient to photograph Plaintiff Samuel Katz's residential and cellular telephones. Plaintiffs object that any interaction beyond what is necessary to photograph Samuel Katz's residential and cellular telephones is needlessly overbroad and invasive, infringes on Plaintiff Samuel Katz's right to privacy and the right to privacy of third parties, and disproportionate to any possible benefit. Direct inspection of the responsive devices would not

disclose whatever information Defendants contend is relevant to this case, but would inevitably disclose Plaintiff's private information, as well as private communications with other third parties, virtually none of whom have anything to do with this lawsuit. Neither Rule 34 nor Rule 45 "create a routine right of direct access to a party's electronic information system." Fed. R. Civ. P. 34(a) advisory committee note on 2006 amendment; Fed. R. Civ. P. 45 advisory committee note on 2006 amendment. *See also, e.g., John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008); *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003). Defendants' demand to inspect Plaintiffs' cell phones is wildly intrusive, overbroad and entirely unsupported as Defendants have not made **any** showing that the phones contain relevant information that cannot be obtained by other means. Even beyond attorney-client communications and protected spousal communications and other private communications (such as with doctors, pharmacies, etc), such inspection would violate serious privacy interests. *Riley v. California*, 134 S. Ct. 2473, 2488-90 (2014). *See also Lee v. Stonebridge Life Ins. Co.*, No. 11-0043, 2013 WL 3889209, *1-2 (N.D. Cal. July 30, 2013) (TCPA defendant "failed to demonstrate sufficient good cause to warrant the extreme step of . . . forensic inspection of Plaintiff's iPhone and personal computer" because it, e.g., "failed to meet its burden of demonstrating that the information sought is not reasonably accessible through other sources.") Plaintiffs' lawsuit arises from alleged violations of the TCPA, which, at its core, is a claim for an invasion of privacy. Defendants attempt to further invade Mr. Katz's privacy constitutes harassment and aggravates the privacy harm. The only conceivable utility for the inspection is to inspect and photograph Samuel Katz's telephones. Plaintiffs object that Mr. Katz's "residential and cellular telephones" are not at issue in this case.

Plaintiff objects to the extent that the Subpoena seeks disclosure or inspection of information subject to any privilege, including, but not limited to, the attorney-client privilege,

the attorney work product doctrine, the common interest privilege, Rule 26(b)(3), Rule 26(b)(4), the associational privacy privilege against discovery under the First Amendment (or other right to privacy under the United States Constitution), or is otherwise protected from disclosure under the Federal Rules of Evidence, Federal Rules of Civil Procedure, or other applicable law. Plaintiff will not produce privileged documents. Plaintiff regularly communicates with his attorneys via his cell phone and therefore his cell phone contains attorney-client communications and work product.

Plaintiff opposes Defendants' pending motion for bifurcation of discovery, and asserts such motion lacks merit. (ECF No. 29.) However, to the extent that the Court grants such motion in whole or in part, Plaintiff objects to the Request to the extent it seeks information regarding any other person besides Plaintiff as inconsistent with the Court's order granting such motion. Plaintiff further objects, to the extent that the Court grants such motion in whole or in part, that the Request is needlessly burdensome, duplicative, and disproportionate to its likely benefit to the extent it seeks information which is not relevant to the specific issues identified in the motion to bifurcate discovery.

Plaintiffs will not permit the inspection sought in the Subpoena. To the extent that additional responsive information comes under Plaintiffs' control subsequent to the service of this response, Plaintiffs reserve the right to assert additional, new, or different objections.

Dated: August 20, 2018    By: _____
Yitzchak H. Lieberman
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo
gparasmo@parasmoliebermanlaw.com
**PARASMO LIEBERMAN LAW**
7400 Hollywood Boulevard, Suite 505
Los Angeles, California 90046

Telephone: (917) 657-6857
Facsimile: (877) 501-3346

David C. Parisi
dcparisi@parisihavens.com
Suzanne Havens Beckman
shavens@parisihavens.com
**PARISI & HAVENS LLP**
212 Marine Street, Unit 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Ethan Preston
ep@eplaw.us
**PRESTON LAW OFFICES**
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Plaintiffs Samuel Katz, Alexander Braurman, and Lynne Rhodes, on their own behalf, and behalf of all others similarly situated*

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that a copy of the foregoing document was this date served upon the parties below under Fed. R. Civ. P. 5(b) by causing a copy of the foregoing to be placed in the United States Mail, postage prepaid, and sent to their last known address as follows:

>Pamela C. Rutkowski
>Craig R. Waksler
>ECKERT SEAMANS CHERIN & MELLOTT, LLC
>2 International Place, 16th Floor
>Boston, Massachusetts 02210
>
>Charles A Zdebski
>Jeffrey P. Brundage, Esq.
>ECKERT SEAMANS CHERIN & MELLOTT, LLC
>1717 Pennsylvania Avenue, NW, 12th Floor
>Washington, District of Columbia 20006
>
>*Attorneys for Defendants*

Dated: August 20, 2018          By: _____
                                   Ethan Preston
                                   ep@eplaw.us
                                   **PRESTON LAW OFFICES**
                                   4054 McKinney Avenue, Suite 310
                                   Dallas, Texas 75204
                                   Telephone: (972) 564-8340
                                   Facsimile: (866) 509-1197

                                   *Attorneys for Plaintiff Plaintiffs Samuel Katz, Alexander Braurman, and Lynne Rhodes, on their own behalf, and behalf of all others similarly situated*