# EXHIBIT 11

Exhibits to Preston Declaration

# PRESTON/LAW OFFICES
4054 McKinney Avenue, Suite 310 / Dallas, Texas 75204
(972) 564-8340 / (866) 509-1197 / ep@eplaw.us

*Via Electronic Case Filing System*

The Honorable Allison D. Burroughs
Judge for the United States District Court for the District of Massachusetts
Joseph Moakley United States Courthouse
Courtroom No. 17, 5th Floor
1 Courthouse Way
Boston, Massachusetts 02210                                               July 26, 2018

      Re:    *Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506

Dear Judge Burroughs,

      We represent the Plaintiffs in the *Katz v. Liberty Power* case captioned above, pending before the Court.[1] On July 24, 2018, the parties met and conferred regarding the discovery disputes identified below, and were not able to resolve them. (Preston Decl. ¶¶36-41.) These disputes are ripe for submission to the Court via letter brief.[2] Plaintiffs nonetheless provide the information identified in L.R. 37.1(b) in the supporting declaration.

**<u>Defendants Need to Preserve Their Vendor Records (Especially Call Records)</u>**

      This is a TCPA case. Call records—electronic documents showing the date, time, and number called—are key evidence to liability and class certification. Based partly on the parties' Rule 26(f) conference, Plaintiffs understand that Defendants' vendors—including Mezzi Marketing, LLC ("Mezzi")—make calls for Defendants and have the relevant call records (in particular for calls to Mr. Katz). It appears Mezzi may have possessed or may still possess call records for calls to Mr. Katz. (*Id*. ¶¶21-22.) However, Mezzi has deleted at least some of its Liberty-related call records. (*Id*. ¶26.) It appears this is by design: Plaintiffs assert Defendants skirt the TCPA by deliberately out-sourcing their telemarketing calls to fly-by-night vendors.

      On May 11, Plaintiffs alerted Defendants to authority that their duty to preserve extended to evidence in Defendants' control, even if the evidence was in their vendors' possession.[3] (*Id*. ¶6.) Moreover, Plaintiffs advised Defendants that their contracts with their telesales agents provide the requisite control to trigger a duty to preserve.[4] (*Id*. ¶10.) However, Defendants have

---

[1] Plaintiffs' counsel include the undersigned law firm, Parisi & Havens LLP, Parasmo Lieberman Law, Mazie Slater Katz & Freeman, LLC, and Fink Law Office.

[2] Plaintiffs submit this letter in view of the United States District Court Judicial Forum Survey, Question and Answer No. 15, regarding discovery disputes: "I ask the parties to begin by filing letters rather than immediately jumping to motion practice."

[3] *See*, *e.g.*, *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346 (S.D.N.Y. 2012); *Cyntegra, Inc. v. Idexx Labs., Inc.*, No. 06-4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007).

[4] By way of example, but without limitation, the contract attached to Defendants' third-party complaint against Mezzi Marketing LLC in this case states: "TELESALES CHANNEL AGREES TO PROVIDE UNRESTRICTED ACCESS TO ANY OF THE PROCESSES, DOCUMENTS, MEETING OR INDIVIDUALS.... DESCRIBED IN THIS AGREEMENT

citing cases).) Likewise, Defendants also contacted Calibrus Call Center Services, LLC about Plaintiffs' subpoenas—and Calibrus subsequently also resisted compliance with the subpoenas. (*Id.* ¶¶19-20.)

At the parties' meet and confer, Defendants' counsel indicated they would promptly alert Mezzi that Defendants withdrew their breach of contract claims, but denied any communication with Calibrus. (*Id.* ¶39.) Defendants indicated they had not objected or interfered with Plaintiffs' subpoenas—except for the subpoena to Mezzi—and would not do so in the future. (*Id.*)

But Defendants' compromise offer does not moot this dispute—the fact is, days later, Defendants still have not remedied the situation with Mezzi, as far as Plaintiffs know (and Plaintiffs asked to be included in that communication). (*Id.*) Moreover, Defendants' interference with Plaintiffs' subpoenas is sanctionable and subject to remedy. *See Price v. TransUnion, LLC*, 847 F. Supp. 2d 788, 794, 796 (E.D. Pa. 2012) ("clear direction of Rule 45" that remedy for adversary of party issuing subpoena is motion to quash; Rule 45 does not permit "adversary of the party [issuing the subpoena to] advise, no matter the reasons, the person commanded by the subpoena . . . to ignore the subpoena's command"; such conduct is "sanctionable" given to adversary to move to quash).[7] Moreover, Defendants' conduct was initially surreptitious: Defendants failed to disclose their unilateral demand that Mezzi not comply with Plaintiffs' subpoenas—until after Mezzi disclosed it to Plaintiffs. Given this record, Plaintiffs need transparency about Defendants' interference with Plaintiffs' subpoenas. Plaintiffs seek an order from the Court requiring Defendants to immediately withdraw any direction or instruction to any third party—including Mezzi—not to comply with Plaintiffs' subpoenas. In order to ensure transparency and minimize any further discovery disputes, the Court should require Defendants to produce all communications with third parties about Plaintiffs' subpoenas and to include Plaintiffs on all communications about Plaintiffs' subpoenas going forward. (*Cf. id.* ¶39.) Finally, Plaintiffs reserve the right to seek sanctions for Defendants' past interference.

**Defendants Abuse Discovery to Harass and Intimidate Class Representatives**

On July 16, 2018, Plaintiffs filed their amended complaint and opposition to the motion to bifurcate. (ECF Nos. 34, 36.) A day later, Defendants began a course of conduct that Plaintiffs can only infer sought to retaliate against Plaintiffs for their filings, to intimidate Plaintiffs and counsel, and to chill their willingness to serve as class representatives.

On July 17, 2018, Defendants' counsel emailed that Defendants planned to sue Mr. Katz

---

[7] *See also Fox Industries, Inc. v. Gurovich*, No. 03-5166, 2006 WL 2882580, *8-9 (E.D.N.Y. Oct. 6, 2006) (objections sent to subpoena recipients "usurped the authority of the court" to "rule on the validity of subpoenas and to direct the recipients to comply or not comply[,] court will not tolerate such behavior"); *Biocore Medical Techs. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998) ("to the extent that the subpoena is proper, opposing counsel has an ethical duty not . . . to interfere with its valid enforcement"); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-201, 2011 WL 3359998, *3 (W.D.N.Y. Aug. 3, 2011) (ordering sanctions where "but for [plaintiff counsel's] advice to [third party] that Defendants' subpoena should be dishonored[,] [third party] would have timely complied without the necessity of the instant motion to compel").

and then, on July 18, implied they would sue Plaintiffs' counsel as well.[8] (Preston Decl. ¶¶30-31.) On July 20, 2018, Defendants served Plaintiffs with a notice of a subpoena to Plaintiff Samuel Katz's spouse ("Spouse") (who is not a party) with subpoenas for document production. (*Id*. ¶28.) Defendants' subpoena seeks a broad swath of documents from Spouse which largely overlaps other discovery previously served on Mr. Katz. (*Id*. ¶29.) At the parties' meet and confer, Defendants indicated they plan to serve another subpoena on Spouse to take her deposition. (*Id*. ¶40.) Defendants justified this discovery against Spouse, citing (1) unspecified discrepancies in her testimony from another lawsuit and (2) the possibility that Spouse's testimony would undermine Mr. Katz's testimony in unspecified ways. (*Id*.) Plaintiffs' counsel are not aware that Spouse has ever given testimony in any case. (*Id*.) Plaintiffs further advised Defendants that they expected any testimony Spouse might have which might possibly be relevant would be subject to the marital communication privilege. (*Id*.) Defendants' counsel said he had suspicions that this was not the case. (*Id*.)

The Court should not permit Defendants to weaponize discovery to harass and intimidate class representatives and thereby chill class actions: the Court "must protect the named representatives from potentially harassing discovery." 7B Charles Alan Wrigh & Arthur R. Miller, Federal Practice and Procedure § 1796.1 (3d ed. 2018). Courts bar discovery with marginal value that disproportionately burdens, harasses, intimidates, or embarrasses class representatives.[9] Courts should protect class representatives' spouses (and their children and employers) against this sort of invasive, weaponized discovery no less than the class representatives themselves because the chilling effect is the same.

Indeed, other courts adjudicating TCPA class actions have limited defendants' discovery to the specific calls alleged in the complaint where the defendants offer nothing more "than conjecture that [the] phone records may relate to [class representatives'] credibility, or that they

---

[8] Defendants assert Mr. Katz violated Florida law by recording a call with one of Defendants' employees, and Plaintiffs' counsel violated the law by disclosing the contents of that recording in Plaintiffs' complaint. Defendants have not provided Plaintiffs a copy of their draft complaint (because Plaintiffs will not agree to accept service of the complaint sight unseen). As far as Plaintiffs understand the law and the claims at issue, however, Defendants' threats against Mr. Katz and Plaintiff's counsel are legally groundless. At the time of the call, Mr. Katz resided in Maine (which does not prohibit recording calls).

[9] *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064, 1065 (9th Cir. 2004) (protective order properly barred discovery on immigration status that "would chill the plaintiffs' willingness and ability to bring [class claims]"; "chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest"); *In re Broiler Chicken Antitrust Litig.*, No. 16-08637, 2018 WL 999899, *1 (N.D. Ill. Feb. 21, 2018) ("limited value of the discovery Defendants are seeking does not justify the significant burden and potential chilling effect on private antitrust enforcement that would follow from a court order that such information be produced by named putative class representatives"); *In re Nissan Motor Corp. Antitrust Litig.*, 22 Fed. R. Serv. 2d 63 (S.D. Fla. 1975) (invasive discovery against class representatives "would tend to invade the plaintiffs' privacy and have a 'chilling effect' upon the bringing and maintenance of class action suits contrary to the intent of Congress").

might in some way reveal that [the plaintiffs] consented to the telemarketing calls at issue in this case." *Mey v. Interstate Nat'l Dealer Servs., Inc.*, No. 14-01846, 2015 WL 11257059, *1 (N.D. Ga. June 23, 2015). Defendants have already subpoenaed all the call records from at least two telephone numbers Mr. Katz used or uses—and they offer no basis to depose Spouse other than unsupported conjecture.

The parties have failed to resolve the disputes over Defendants' subpoenas to Spouse. (Preston Decl. ¶40.) Plaintiffs seek a protective order from the Court prohibiting Defendants from serving or enforcing any subpoena against Spouse, Plaintiffs' other relatives, or their employers. If Defendants can present a particularized case that such a subpoena is actually necessary, they can move to modify the protective order.

**Defendants Should Produce Documents in Native Format, As Plaintiffs Requested**

Plaintiffs requested Defendants produce electronic documents in native or near-native format early, often, and clearly, in their document requests and otherwise. (*Id*. ¶¶32-33(document requests defined "native format" as "the format in which [responsive documents] are ordinarily used or accessed by Liberty outside of litigation," which explicitly includes metadata).) The parties have met and conferred on this issue since their May 1, 2018 Rule 26(f) conference. (*Id*. ¶32.) On July 19, 2018, Defendants identified three categories of documents that they would not produce in native format—email, pdf files, and Word files. (*Id*. ¶35.)

Plaintiffs seek an order requiring Defendants to produce email, pdf files, and Word files in their native format. Defendants' responses to Plaintiffs' document requests are due on July 27, 2018. (*Id*. ¶33.) At the parties' latest meet and confer, Defendants indicated that they had documents ready for production in native format but would withhold production until Plaintiffs accepted production in a Bates-stamped pdf file. (*Id*. ¶41.) Plaintiffs seek relief from the Court now—to ensure Defendants make a timely production in the right format, and to minimize the risks of production in an improvident format.

"Rule 34(b) permits the requesting party to designate the form or forms in which it wants electronically stored information produced." Fed. R. Civ. P. 34(b) advisory committee notes on 2006 amendments.[10] Plaintiffs produced native files to Defendants in the limited categories *where Defendants requested native format*—otherwise Plaintiffs produced Bates-stamped pdf files. (Preston Decl. ¶34.) Plaintiffs offered to produce all their documents in native format, but Defendants rejected that and instead sought Bates-stamped pdf files. That was Defendants' choice, but Defendants' choice cannot be imputed to—or forced on—Plaintiffs.

Where Plaintiffs "request native format/metadata at the outset, the burden would shift to [Defendants] to object to this form as unduly burdensome." *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prod. Liab. Litig.*, 279 F.R.D. 447, 450 (S.D. Ohio 2012). Cf. *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 107 (E.D. Pa. 2010) (given "benefits of producing metadata, the

---

10    *Cf*. Fed. R. Civ. P. 34(b)(1)(C); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prod. Liab. Litig.*, 279 F.R.D. 447, 449 (S.D. Ohio 2012) (under Rule 34(b)(1)(C), "requesting party is entitled to specify the form or forms in which electronically stored information is to be produced")

dates documents are created and modified can provide important or critical context that is missing from a non-native pdf files. Metadata permits Plaintiffs to "verify the authenticity of documents," "understand when documents were actually created or modified," "sort, review, and search electronic documents by metadata fields," and "understand the creation and storage context of the documents themselves." *Id*. Native format production is essential if Plaintiffs are going to be able to use these documents with the same facility as Defendants. *Id*. Even if Defendants were clearly offering to provide metadata in load files together with a single non-native pdf file, it is still vastly easier for Plaintiffs to review and analyze separate documents in their native format than referring back and forth between Defendants' pdf and load files.

Sincerely,

Ethan Preston

**CERTIFICATE OF SERVICE**

I, Ethan Preston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 26, 2018        By:  /s/ Ethan Preston
                                  Ethan Preston