EXHIBIT 13

Exhibits to Preston Declaration



| | Eckert Seamans Cherin & Mellott, LLC | TEL: 202 659 6600 |
| | 1717 Pennsylvania Avenue, N.W. | FAX: 202 659 6699 |
| | 12th Floor | |
| | Washington, D.C. 20006 | |

Jeffrey P. Brundage, Esq.
Direct: 202-659-6676
jbrundage@eckertseamans.com

August 9, 2018

**VIA ECF**

The Honorable Allison D. Burroughs
Judge for the United States District Court for the District of Massachusetts
Joseph Moakley United States Courthouse
Courtroom No. 17, 5th Floor
1 Courthouse Way
Boston, Massachusetts 02210

      Re: *Samuel Katz, et al., v. Liberty Power Corp., LLC, et al.*, No. 1:18-cv-10506-ADB –
         Response to Plaintiffs' July 26, 2018 letter.

Dear Judge Burroughs:

      We write to respond to the Plaintiffs' July 26, 2018 letter on behalf of the Defendants in
the above-captioned matter. As explained below, the positions taken by the Plaintiffs are
meritless and the relief they request should be denied.

## I. Defendants Have Preserved Documents in Their Position, Custody, and Control and It Is Plaintiffs' Burden to Subpoena Third-Parties

      On or about April 5, 2018, Defendants issued an internal litigation hold letter in response
to the Complaint filed on March 16, 2018. The Defendants did exactly what they told the
Plaintiffs they would do: "I can confirm the Defendants have started on the necessary document
preservation discussions." Decl. of Ethan Preston ¶ 4 ("Preston Decl."), ECF No. 48; ECF No.
48-3 at 1. Defendants actually did more because they issued a litigation hold letter, not just
began discussions, all before a responsive pleading was due. Plaintiffs have issued subpoenas
and document preservation letters to Defendants' vendors and Defendants have not objected or
moved to quash any of them. That is because this is the proper way for Plaintiffs to obtain
documents from third parties, despite the potential disruption and damage to business
relationships between Defendants and their vendors the subpoenas may cause.

      Plaintiffs' purported concerns about spoliation are belied by their own actions. On May
23, 2018, Plaintiffs were made aware that "Defendants Deny Control over Their Vendors'
Records." Preston Decl. ¶ 9. That same day, Defendants provided a First Amended Fed. R. Civ.
P. 26(a)(1) disclosure listing 13 additional vendors and stated "As you will see, vendors are
listed and thus you can send out your preservation notices. *Id.* ¶ 18; ECF No. 48-5 at 6. Instead
of immediately sending out preservation letters and subpoenas, Plaintiffs waited until June 12
(20 days) to send out their form preservation letters. Preston Decl. ¶ 18. Plaintiffs waited until

## IV.   <u>Mr. Katz's Wife Possesses Relevant Discoverable Information</u>

Mr. Katz's wife possesses relevant discoverable information and Defendants are acting in good faith to obtain it.  In *United Therapeutics Corp. v. Watson Labs., Inc.*, 200 F. Supp. 3d 272, 276–77 (D. Mass. 2016), the Court noted:

> Federal Rule of Civil Procedure 45 governs the use of subpoenas to obtain discovery from non-parties. *See* FED. R. CIV. P. 45.  A non-party witness is subject to the same scope of discovery as a party is under Rule 34. *See id.* (Advisory Committee's note to the 1970 amendments).  Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1).  It is axiomatic that relevance is a low standard.  "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, No. 14-CV-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) (quoting *E.E.O.C. v. Electro–Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)).  Plaintiffs' request "a particularized case that such a subpoena is actually necessary." ECF 48 at 5.  The particularity is as follows and the relevancy is overwhelming.

Mr. Katz has at least five telephone numbers: two cellular, 774-462-XXXX, 617-997-███; two Verizon FIOS landlines, 508-966-███, 508-966-███, and a Google Voice number, 978-877-███  Mr. Katz's wife can explain why her household has two VoIP landline telephone numbers, and why both of those VoIP telephone numbers are used almost entirely as a call forwarding telephone number to the Google Voice number.[5]

Mr. Katz's wife was a co-Plaintiff with Mr. Katz in lawsuit alleging violations of the TCPA filed in Commonwealth of Massachusetts. *Katz v. Royal Seas, Inc.*, No. 1666-CV-000158 (Mass. Tr. Court, Milford Dist. Ct. Div.). **Exhibit 5**, KATZ 004335-004342.  In that lawsuit, she alleges she owns and control telephone numbers that are also the subject of this lawsuit. *Id.* ¶ 5.  She further alleges, contradictorily, that telephone numbers that are the subject of this lawsuit are both cellular telephones and landlines. *Id.* ¶¶ 5, 22-23.  Plaintiffs' cannot argue discovery regarding Plaintiff Katz's wife, who joins her husband as a Plaintiff in TCPA lawsuits, will have a "chilling effect" on Plaintiff Katz.

In addition, Mr. Katz alleges he suffered damages as a result of the alleged calls because they were intrusive and harassing, and diverted his attention away from his daily activities. First Am. Compl. ¶ 66, ECF No. 34.  Mr. Katz's wife can provide testimony regarding this.  Furthermore, Mr. Katz provided contradictory testimony under oath, possibly perjuring himself.  In prior sworn testimony signed approximately three months prior to filing this lawsuit, he

---

[5] These facts were obtained via a third-party subpoena.

claimed that his residential phone number ended in ████. **Exhibit 6**, KATZ 004196. In this lawsuit, he now claims as his residential phone number is 508-966-████ Mr. Katz's wife can provide information on what telephone number(s) are Plaintiff Katz's actual residential telephone number.

All of the above reasons support discovery to Mr. Katz's wife. Despite all of the above facts, Plaintiffs' counsel (also representing Mr. Katz's wife) produced **_zero_** documents in response to a subpoena and to date has yet to meet and confer on the issue despite multiple requests. This likely will be brought to the Court in a forthcoming motion to compel. Plaintiffs' request for a protective order should be denied. Defendants' have issued a valid subpoena for the deposition of Mr. Katz' wife for September 12, 2018. Defendants ask the Court to enter an Order that Mr. Katz's wife comply with this subpoena and appear for deposition.

## V.  Plaintiffs' Refuse to Compromise on Document Production and All Native Document Production is Unduly Burdensome

Plaintiffs have refused to compromise one iota on their request for an entirely native document production. In contrast, Defendants advised they would produce files in TIFF, with a metadata load file, and documents not susceptible to TIFF production as natives (*e.g.*, Microsoft excel, audio files, etc.). *See* Defendants' Objections Plaintiff Samuel Katz's 80 Requests for Production of Documents, **Exhibit 7** at 3. Defendants then offered a compromise of producing PDFs instead of TIFFs. *Id.  See* ECF No. 48-17 at 3 "Just to be clear, we always produce in .TIFF with a load file and that is our preference here. Your preference is native. I am suggesting a middle ground." Defendants also advised Plaintiffs they would accommodate a request for a unique load file. Plaintiffs' response has always been the same: "all natives." This is contrary to the law. "The responding party is not required to accede to the requesting party's specification of form. Instead, Rule 34(b)(2)(D) permits the responding party to object and to state what form it proposes to use for production." 8B CHARLES ALAN WRIGHT, *ET AL.*, FED. PRAC. & PROC. CIV. § 2219 FORM FOR PRODUCING ELECTRONICALLY STORED INFORMATION (3D ED.). Defendants' did precisely this in their objections to Plaintiffs' production instructions. **Exhibit 7** at 4. "Should the parties be unable to resolve this difference, the court will have to decide on the form for production on motion." FED. PRAC. & PROC. CIV. § 2219. "[The Court is] not limited to the forms of production specified in the request or the response." *Id.*

All native production is unduly burdensome.[6] First, natives are inherently disorganized. One email file for Microsoft outlook, an .msg file, could be an email thread that is 15 pages long, and some of those emails may have multiple attachments, privileged documents, and documents that require redaction. Production of the above example as native prevents the proper assertion of privilege and redactions. Production of the above example without a bates number on each page and each attachment is unsystematic and is prone to confusion and alteration. Instead, bates

---

[6] Defendants have retained a document vendor at their own expense to assist in document production.

# EXHIBIT 5

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

Norfolk, ss.                                    Milford Court Division of the
                                                Trial Court

Samuel Katz,
Shelby Hinkley,
(husband and wife)

                Plaintiff,                      **COMPLAINT**
                                                **JURY TRIAL DEMANDED**
v.

Royal Seas Inc.,

                Defendant.

## INTRODUCTION

1. Plaintiffs, Samuel Katz and his wife Shelby Hinkley, bring this action to be left alone and seeking damages from the consistent and willful telephone calls by the Defendant, Royal Seas Inc., otherwise known as Holiday Cruise Lines and Royal Seas Cruises. The Plaintiffs' home phone number (on the National Do-Not-Call Registry for years) and cell phone numbers were subject to Eighteen aggressive sales phone calls from the Defendant's representatives. The Plaintiff's Demand under G.L. 93A was not satisfactorily answered.

## JURISDICTION

2. Jurisdiction of this Court arises under 47 USC Section 227(b)(3) of the TCPA, giving the Plaintiff a private right of action in state court. Injunctive relief is available pursuant to the TCPA.

3. This action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. Section 227 *et seq.* by Defendant its agents in their illegal efforts to sell the Plaintiff goods and services.

-1-

KATZ 004335

5. Plaintiffs' numbers (617) 997-███ (978) 877-███, and ██████████ are cell phone numbers owned, controlled, and answered by the Plaintiffs.

6. Defendant Royal Seas and its sales reps repeatedly called Plaintiffs on their phones using an automatic telephone dialing system in an attempt to sell the Plaintiff "free cruises" have Plaintiffs pay a small amount of money for the Cruise, and encouraged Plaintiffs to purchase "upgrades" as well as other goods and services.

7. Plaintiffs received Eighteen or more of these auto-dialed calls from Defendant Royal Seas.

### *Calls to Cell Phone* (617) 997-███

8. On Monday, October 12, 2015 Plaintiff received an unsolicited call from the Defendant from the number (857) 319-2055 at or about 12:32 PM.

9. On Friday, October 16, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 861-4243 at or about 2:59 PM.

10. On Sunday, October 25, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 829-4511 at or about 2:04 PM.

11. On Wednesday, October 28, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 829-4512 at or about 11:30 AM.

12. On Saturday, November 7, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 861-4243 at or about 9:48 AM.

13. On Tuesday, November 10, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 778-6822 at or about 3:35 PM.

14. On Monday, November 16, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 778-7281 at or about 3:46 PM.

-4-

15. On Tuesday, November 17, 2015 Plaintiff received an unsolicited call from the Defendant from the number (213) 217-9999 at or about 8:36 PM.

16. On Friday, December 4, 2015 Plaintiff received an unsolicited call from the Defendant from the number (617) 861-0020 at or about 11:22 AM.

17. On Sunday, December 13, 2015 Plaintiff received an unsolicited call from the Defendant from the number (213) 217-9999 at or about 1:45 PM.

18. On Thursday, January 7, 2016 Plaintiff received an unsolicited call from the Defendant from the number (920) 968-7665 at or about 10:10 AM.

19. On Saturday, January 9, 2016 Plaintiff received an unsolicited call from the Defendant from the number (413) 931-3050 at or about 9:50 AM.

### Calls to Cell Phone █████████

20. On Thursday, March 17, 2016, Plaintiff received an unsolicited call from the Defendant from the number 857-228-4796.

21. On Tuesday, March 22, 2016, Plaintiff received an unsolicited call from the Defendant from the number 857-228-4796.

22. On Wednesday, March 23, 2016, Plaintiff received an unsolicited call from the Defendant from the number 857-228-4796.

### *Violation of the Do Not Call Registry*
### calls to landline (978) 877-█████

23. On Wednesday, May 11, 2016, Plaintiff received an unsolicited call from the Defendant from the number (617) 209-7843.

KATZ 004339

# **<u>EXHIBIT 6</u>**

**DECLARATION OF SAMUEL KATZ**

I, Samuel Katz, state and declare as follows:

1. I am over the age of 18 years. I am a named plaintiff in this lawsuit. I make this declaration in support of Plaintiffs' motion for class certification. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently to the truth of the facts as stated herein.

2. On or about February 2, 2008, I placed my number ending in ▇▇ on the National Do-Not-Call registry.

3. Between the dates January 8, 2016 through January 20, 2016; February 3, 2016 to February 4, 2016; and February 29, 2016 to March 3, 2016, I received a total of nineteen (19) calls from 704-842-3066 to my residential number ending in ▇▇.

4. The companies who called me identified themselves as "Energy Solutions" and "Consumer Energy Solutions." Based on information I understand was learned by my counsel this week, I allege that Defendant Clean Energy Experts, LLC made these calls. As I have testified, I did not give prior express consent for any of these calls.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this _8_ th day of December 2017 at _Sebec_, Maine.

SAMUEL KATZ

Declaration of Samuel Katz